**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

NICOLAE JEMNA,

Petitioner,

v.

MARKWAYNE MULLIN, Secretary of the Department of Homeland Security, et al.,

Respondents.

Case No.: 3:26-cv-02396-RBM-VET

**ORDER GRANTING AMENDED PETITION FOR A WRIT OF HABEAS CORPUS**

**[Doc. 10]**

Pending before the Court is Petitioner Nicolae Jemna's ("Petitioner") Amended Petition for a Writ of Habeas Corpus ("Amended Petition") pursuant to 28 U.S.C. § 2241. (Doc. 10.) For the reasons set forth below, the Amended Petition is **GRANTED** and Petitioner's remaining motions are **DENIED AS MOOT**.

## I. BACKGROUND

### A. Factual Background

Petitioner, a citizen of Moldova and Romania, entered the United States on a temporary B1/B2 visitor visa on June 4, 2024. (Doc. 10 at 2.) Petitioner's "visa was scheduled to expire on December 3, 2024." (*Id.*) On October 11, 2024, two months before his visa expired, Petitioner submitted an affirmative application for asylum to USCIS and, as part of his application, received a work permit and a Social Security number. (*Id.*; Doc.

11 at 2.) While awaiting the adjudication of his asylum application, Petitioner lived in Illinois and worked as a truck driver. (Doc. 10 at 2.) As part of his job, Petitioner came to California to pick up a vehicle at Camp Pendleton. (*Id.*)

On December 9, 2025, U.S. Immigration and Customs Enforcement ("ICE") officers detained Petitioner when he arrived to pick up the vehicle at Camp Pendleton. (*Id.*) When he arrived at the gate in Camp Pendleton, Petitioner was asked if he was a permanent resident, and he answered that "he wasn't but that he had permission to work." (*Id.* at 2–3.) After waiting two hours, officials told him that he was under arrest because "you're in pending status." (*Id.* at 3.) "At no time during or after [Petitioner's] arrest did ICE tell him why they were no longer allowing him to stay out of custody while applying for asylum." (*Id.*) Petitioner also did not receive "any paperwork or reasons explaining this decision." (*Id.*) "Three days after [his] arrest, ICE served him with a warrant." (*Id.*) Petitioner was then issued a Notice to Appear ("NTA") which placed in removal proceedings under 8 U.S.C. § 1229a and initiated removal proceedings against him pursuant to 8 U.S.C. § 1229a. (Doc. 11 at 2.)

On December 19, 2025, Petitioner received a bond hearing before an immigration judge ("IJ"). (Doc. 10 at 2.) The IJ denied Petitioner bond, finding that Petitioner failed to show he was not a danger or a flight risk. (*Id.*) On June 12, 2026, Petitioner was ordered removed to Romania or, in the alternative, Moldova. (Doc. 11 at 2.)

**B. Procedural Background**

On February 5, 2026, Petitioner, by and through counsel, filed his first habeas petition challenging the legality of his immigration detention. *See Jemna v. Warden, Otay Mesa Det. Ctr.*, Case No. 3: 26-cv-00725-RBM-VET (S.D. Cal. Feb. 5, 2026), ECF No. 1. This Court denied the first habeas petition without prejudice. *See id.*, ECF No. 8.

On April 15, 2026, Petitioner, proceeding *pro se*, commenced the instant action by filing his second habeas petition. (Doc. 1.) Shortly thereafter, this Court issued an Order requiring Petitioner to show cause why this action should not be dismissed as duplicative ("OSC"). (Doc. 2.) Petitioner timely filed a Response to the OSC. (Doc. 3.) On August

31, 2026, the Court discharged the OSC and referred the second petition to Federal Defenders of San Diego, Inc. ("FDSDI") for an evaluation of whether Petitioner is eligible for appointment of counsel. (Doc. 8 at 2.)

Pursuant to the Court's Order (*see* Doc. 8 at 2), Petitioner, by and through counsel, filed the instant Amended Petition on September 8, 2026. (Doc. 10.)[1] Respondents filed a Response to the Amended Petition on September 15, 2026. (Doc. 11.) Petitioner filed a Traverse on September 22, 2026. (Doc. 12.)

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

Petitioner claims his detention "implicated [his] protected liberty interest and violated due process." (Doc. 10 at 2.) Respondents argue that: (1) Petitioner is lawfully detained under 8 U.S.C. § 1226(a); (2) the Amended Petition "runs afoul of the abuse of the writ doctrine"; and (3) "Petitioner has not exhausted the process available to him nor has he made any effort to demonstrate that exhaustion should be waived." (Doc. 4 at 3–9.)[2]

---

[1] Petitioner's Motion to Appoint Counsel (Doc. 1 at 7) is therefore **DENIED AS MOOT**.

[2] Respondents also argue that Petitioner "fails to explain why release is the remedy for" Fourth Amendment violations. (Doc. 11 at 4–5.) But the Court need not address such

**A. Abuse of the Writ**

Respondents argue that the abuse of writ doctrine precludes Petitioner's claims in this action because "the arguments in the instant [Amended Petition] are the same as raised in his first petition and, if not raised, could have been raised in the first petition, and because Petitioner already received an individualized bond hearing . . . ." (Doc. 11 at 4.) Petitioner responds that his first petition was filed over seven months ago and "[g]iven the rapidly-evolving nature of these areas of law in the past year, [his] updated claims are not an abuse of the writ—particularly when this Court previously denied his habeas petition 'without prejudice.'" (Doc. 12 at 4–6.) The Court agrees.

The "abuse of the writ doctrine forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023). While there is no statutory prohibition on successive § 2241 habeas corpus petitions, the Ninth Circuit has recognized "that the abuse of the writ doctrine may apply to successive habeas petitions challenging immigration detention filed pursuant to § 2241." *Calderon v. Chestnut*, No. 1:26-CV-02552-TLN-CSK, 2026 WL 2806912, at *3 (E.D. Cal. Sept. 18, 2026) (citing *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011)). Under this doctrine, "a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." *Alaimalo*, 645 F.3d at 1049. The government bears the burden of pleading abuse of the writ and must do so with "clarity and particularity." *Id.* "The burden to disprove abuse then becomes petitioner's." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

In this case, the Court does not find that the abuse of the writ doctrine bars

---

arguments because, as Petitioner notes, the Amended Petition "did not raise a Fourth Amendment claim—he argued that his warrantless arrest 'was not statutorily authorized' under 8 U.S.C. § 1226(a) and § 1357(a)(2)." (Doc. 12 at 6 (citing Doc. 10 at 6–14).)

consideration of the instant Amended Petition. As a preliminary matter, the Court denied the first petition in *Jemna I* without prejudice. *Jemna I*, Case No. 3:26-cv-00725-RBM-VET, ECF No. 8 at 9–10; *see also Villatoro v. Mullin*, No. 5:26-CV-04488-MWC-DSR, 2026 WL 2507725, at *6 (C.D. Cal. Aug. 25, 2026) (finding abuse of the writ did not bar a successive habeas petition that "request[ed] the release of [p]etitioner on nearly identical grounds as his first . . . petition," where the first petition was explicitly denied "without prejudice" and the court had "invited him to file an amended petition") (citing *Mendoza v. Warden, California City Corr. Ctr.*, No. 1:26-cv-03785-DAD-CSK (HC), 2026 WL 1481759, at *2 (E.D. Cal. May 27, 2026)).

Petitioner has also shown cause exists for his current claims. Petitioner acknowledges that he raised a similar procedural due process claim in the first petition but argues that the first petition was filed over seven months ago and his "updated claims are not an abuse of the writ" due to the rapidly evolving law. (Doc. 12 at 4, 6.) Indeed, "[i]n December of 2025, the volume of habeas petitions filed in federal district courts regarding immigration detention had recently rapidly increased." *Islamov v. Larose*, Case No.: 26cv4219-LL-MSB, 2026 WL 2644087, at *2 (S.D. Cal. Sept. 8, 2026) (citing *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164 (9th Cir. 2026) ("The government's change in policy has resulted in detained [noncitizens] filing thousands of habeas petitions in federal courts across the country, seeking bond hearings and possible release from detention.")). "It is no secret that the number of habeas petitions in this District has risen rapidly in the past ten months, and that the law on such petitions was significantly less clear in December of 2025 than it is today." *Ozbalik v. LaRose*, Case No.: 26-cv-4239-JES-SBC, 2026 WL 2455825, at *2 (S.D. Cal. Aug. 21, 2026).

In *Jemna I*, Petitioner, by and through different counsel, claimed he was released on parole after he entered the United States in June 2024 and based his procedural due process claim on his alleged parole revocation. *See Jemna I*, Case No. 3:26-cv-00725-RBM-VET, ECF No. 1 at 6; *see id.*, ECF No. 7 at 3. The Court determined Petitioner had not established that he was previously released from immigration detention on parole to raise

such a liberty interest. *See id.*, ECF No. 8 at 8. The Court, however, did not address whether his pending asylum application provided a basis for any of his claims for relief. *See id*. (analyzing whether Petitioner's admission through a B-2 visa created the same liberty interest as noncitizens who were previously detained and released on parole). In the instant Amended Petition, filed by and through FDSI as counsel, Petitioner cites several district courts' recent decisions and argues for the first time that Respondents' decision to not detain him while his affirmative asylum application was pending "created a liberty interest." (Doc. 10 at 4–6.) Based on these facts, the Court finds that Petitioner has shown cause for raising this new ground in the Amended Petition "and that prejudice in the form of unconstitutional detention may result if the Court does not consider it on the merits." *Islamov*, 2026 WL 2644087, at *2.

The Court further finds "a miscarriage of justice would occur if the Court declined to hear this argument on common law procedural grounds." *Ozbalik*, 2026 WL 2455825, at *2. As another court in this District explained:

> In prisoner habeas cases, the miscarriage of justice exception is often tied to claims of actual innocence because "the quintessential miscarriage of justice is the execution of a person who is entirely innocent." *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *id.* at 324–25. Immigration detention has no direct equivalent to actual innocence: indeed, it allows the confinement in prison-like conditions of individuals who have been charged with no crime. However, the detention of a man who had been given the right to be within this country shocks the conscience in a similar manner to the criminal conviction of an innocent man. *See Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629 (S.D. Cal. Sept. 26, 2025) (explaining the due process protections of petitioners with prior parole).

*Id.* The Court agrees with the reasoning in *Ozbalik* and applies it here.

For those reasons, and "[c]onsidering the timing of the earlier petition" as well as the Court's determination that the Due Process Clause affords Petitioner pre-deprivation procedures prior to his detention (*see infra*), "the Court finds that it would be a quintessential miscarriage of justice to decline to hear the argument of someone who should not have been redetained in the first place nearly nine months later on procedural grounds."

*Id.*; *see Villatoro*, 2026 WL 2507725, at *6. Accordingly, the Court does not find it appropriate to dismiss the Amended Petition for abuse of the writ.

**B. Exhaustion**

Respondents contend that Petitioner has not exhausted his administrative remedies because he "was provided a bond hearing under 8 U.S.C. § 1226(a) and "appealed the bond denial to the BIA but the BIA has not completed its review." (Doc. 11 at 5, 8.) Petitioner responds that "Respondents do not appear to contend that [his] procedural due process or warrant arguments required exhaustion—only the IJ's denial of bond." (Doc. 12 at 6.) Petitioner further argues that "exhaustion is not only unnecessary but impossible" because he seeks "a new bond hearing based on his now prolonged detention" and "the BIA cannot review a bond hearing that has not yet happened." (*Id.* at 6–7 (cleaned up).)

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). Although 28 U.S.C. § 2241 "does not specifically require petitions to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (cleaned up). The Court "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (cleaned up). "An exception to the exhaustion requirement has been carved for constitutional challenges to . . . [DHS] procedures." *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam) (quoting *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994)).

Because this Court already addressed Petitioner's arguments concerning the IJ's bond denial in *Jemna I*, it will not do so again here. While Respondents correctly note that Petitioner may seek a new § 1226(a) bond hearing based on a material change of circumstances (*see* Doc. 11 at 7), administrative remedies would be "inadequate and futile"

because a post-deprivation bond hearing would not address the propriety of Petitioner's detention, which concerns the constitutionality of an agency action prior to the bond hearing. *See Cardenas v. Giles*, Case No. 8:26-CV-02322-ACCV, 2026 WL 2722730, at *2 (C.D. Cal. Sept. 14, 2026) (quoting *R.N.G. v. Semaia*, — F.Supp.3d —, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026)); *Zhou v. Janec[k]a*, Case No. 5:26-cv-04167-DTB, 2026 WL 2365550, at *5 n.4 (C.D. Cal. Aug. 14, 2026) ("Constitutional claims are generally excepted from the exhaustion requirement because neither immigration judges nor the BIA are permitted to consider constitutional challenges to the statutes they administer.") (citing *Sola*, 720 F.3d at 1135).

"Accordingly, given the inadequacy of available administrative remedies to redress Petitioner's irreparable harm, the Court finds it appropriate to waive any prudential exhaustion requirement" as to Petitioner's due process claims. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

**C. Due Process**

Petitioner claims the Government's decision to allow him to file an asylum application created a protected liberty interest in remaining out of custody. (Doc. 10 at 3–4.) Respondents do not substantively address Petitioner's due process arguments. (*See generally* Doc. 4.) Instead, Respondents claim that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1226(a) based on ICE's determination that "Petitioner is deportable/ removable under 8 U.S.C. § 1227(a)(1)(B), as an individual who was admitted to the United States but remained for a time longer than permitted by law (i.e., a visa overstay)." (Doc. 11 at 3.)

"Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them." *Zhou v. Janec[k]a*, Case No. 5:26-cv-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026) (collecting cases). This Court has previously considered and granted a habeas petition filed by a similarly situated petitioner who entered the United States on a temporary visa, filed an asylum application, and the Government chose not to detain him

during the pendency of his asylum application. *See Romero Teran v. Larose*, Case No. 3:26-cv-02396-RBM-VET (S.D. Cal. Sep. 17, 2026), ECF No. 6. In *Romero Teran*, the Court held that the petitioner's detention without notice or a pre-deprivation hearing violated the Fifth Amendment's Due Process Clause. *Id.* at 5. Applying the due process inquiry in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court found the petitioner had "the same liberty interest in his continued freedom as an individual initially detained" because "[a]lthough the government did not detain and then release [him], it made a decision *not* to detain [him] in the first place . . . ." *Id.* at 6 (quoting *Kharitonova v. Albarran*, Case No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026)) (cleaned up). "[W]hile Respondents' decision not to detain Petitioner was discretionary," that decision created a liberty interest in his continued freedom as Respondents processed his asylum application, granted him work authorization, took his biometrics, and advised him to appear for multiple hearings over a period of years. *Id.* at 5 (citing *Kharitonova*, 2026 WL 531441, at *2; and *Cardenas*, 2026 WL 2722730, at *3) (cleaned up).

Like the petitioner in *Romero Teran*, Petitioner in this case lawfully entered the United States on a temporary visa, filed an affirmative asylum application before his visa expired, and received a work permit as well as a Social Security number as part of his pending asylum application. (Doc. 10 at 2.) Petitioner also "submitted to all requirements for biometric and biographical information . . . ." (*Id.* at 4.) As such, the Court adopts its reasoning in *Romero Teran* and applies it here. For the same reasons, the Court finds that Respondents' decision not to detain Petitioner while his asylum application was pending created a liberty interest and his detention without notice or an opportunity to be heard thereby violated his due process rights.[3]

//

//

---

[3] 2 In light of the disposition herein, the Court declines to address the Petition's remaining grounds for relief.

## IV. CONCLUSION

Based on the foregoing reasons, the Amended Petition (Doc. 10) is **GRANTED** and Petitioner's remaining motions (Docs. 5–6) are **DENIED AS MOOT**. Accordingly, the Court further **ORDERS** as follows:

1. The Government is **ORDERED** to immediately release the noncitizen from custody, subject to the preexisting conditions of release.
2. The Court **ORDERS** that, prior to any such re-detention, Petitioner is entitled to notice and a hearing before an immigration judge to determine whether detention is warranted.
3. The noncitizen bears the burden of demonstrating, by a preponderance of the evidence, that he is not a danger to the community or a flight risk. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

**IT IS SO ORDERED**.

DATE: September 30, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE